UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DARLENE ALLEMAN

                                        CIVIL ACTION

VERSUS

                                        NUMBER 08-237-SCR

STATE OF LOUISIANA,
DEPARTMENT OF ECONOMIC
DEVELOPMENT


**RULING ON MOTIONS FOR SUMMARY JUDGMENT**

Before the court is a Motion for Summary Judgment filed by the State of Louisiana, Department of Economic Development. Record document number 54. Plaintiff also filed a Motion for Summary Judgment. Record document number 55.[1]


**Background**

Plaintiff Darlene Alleman filed this action pro se, asserting numerous federal and state law claims against her former employer

---

[1] Defendant filed an opposition in reply to the plaintiff's motion. Record document number 56. Record document number 55 was filed as a Motion for Summary Judgment, and the defendant argued that the plaintiff's motion should be denied because it is untimely. Defendant also argued that if the court considers the plaintiff's motion as her opposition memorandum, the court should grant its motion because the plaintiff did not file a statement of the material facts to which there is a genuine issue to be tried. Since the plaintiff's motion was filed within the time period for filing her opposition to the defendant's motion, the court will consider it as such. The court considers in opposition to the defendant's motion only the specific arguments and competent summary judgment evidence submitted by the plaintiff. Therefore, the plaintiff's failure to provide a statement of facts does not prejudice the defendant.

the Louisiana Department of Economic Development.[2]   Plaintiff claimed that during her employment from June 2007 to November 2007[3] she was subjected to retaliation, unfavorable treatment and a hostile work environment because of her race and sex, discrimination because of a disability, denial of leave under the Family and Medical Leave Act, denial of her rights under the Fourteenth Amendment and the Equal Protection Clause and rights to privacy and individual dignity under the Louisiana Constitution. Plaintiff's claims for discrimination, harassment, and retaliation were brought under federal statutes, Title VII, 42 U.S.C. § 1981(a), the Americans With Disabilities Act (ADA), the Family and Medical Leave Act (FMLA) and parallel state laws that prohibit discrimination known as the Louisiana Employment Discrimination Law (LEDL).[4]   Plaintiff also asserted a claim for intentional infliction of emotional distress and claims under the Louisiana Constitution and Louisiana Worker's Compensation Law.

Defendant moved for summary judgment and dismissal of all

---

[2] Because the plaintiff is proceeding pro se, her complaint and allegations are liberally construed.   *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594,595-96 (1972); *Nerren v. Livingston Police Dept.,* 86 F.3d 469, 472 (5th Cir. 1996).

[3] Plaintiff was employed as an Accounting Technician from June 27, 2007 to November 28, 2007 at the Louisiana Department of Economic Development.   During this period of employment the plaintiff was in a probationary status.

[4] LSA-R.S. 23:323 (disability discrimination); LSA-R.S. 23:332 (race and sex discrimination).

claims alleged by the plaintiff.  Review of the competent summary judgment evidence relevant to each claim alleged by the plaintiff shows that the defendant's motion is properly supported and that there is no genuine issue for trial on any of the plaintiff's claims.

## Summary Judgment Standard

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law.  Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).  If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor.  *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.  This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor.  *Anderson*, 477 U.S. at 255, 106

S.Ct. at 2513.   The court may not make credibility findings, weigh the evidence, or resolve factual disputes.   *Id.; Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000).   On summary judgment, evidence may only be considered to the extent not based on hearsay or other information excludable at trial.   *Fowler v. Smith,* 68 F.3d 124, 126 (5th Cir. 1995); *Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547, 549 (5th Cir. 1987).[5]   The applicable law determines what facts are material.   *Nichols v. Loral Vought Systems Corp.,* 81 F.3d 38, 40 (5th Cir. 1996).

The applicable laws and the court decisions which interpret and apply them are set out below in the sections of this ruling that address each of the plaintiff's claims.

---

[5] The deposition excerpts of Jenifer Williams and Laura Pate constitute the only competent summary judgment evidence submitted by the plaintiff.   Plaintiff Exhibits 29 and 32.   Plaintiff's remaining exhibits cannot be considered in determining whether there is a genuine dispute for trial because they are unsworn documents.   Unsworn documents are not appropriate for consideration in ruling on a summary judgment motion.   *Martin, supra.*

Plaintiff's unsworn allegations and statements in her memorandum are also not competent summary judgment evidence.   *Johnston v. City of Houston,* 14 F.3d 1056, 1060 (5th Cir. 1994)(unsworn pleadings, memoranda or the like are not competent summary judgment evidence). Plaintiff's initial form complaint was sworn.   However, the plaintiff's subsequent amended complaints were not sworn, including the Third Amended Complaint filed on February 23, 2009.   The Third Amended Complaint did not adopt or incorporate the initial complaint, and it is the only complaint the plaintiff relied upon in her opposition to the defendant's motion.

**Title VII, § 1981 and the LEDL: Race and Sex Discrimination Claims Based on Disparate Treatment and Hostile Environment**

### Applicable Law

The well-established *McDonnell Douglas*[6] framework is applied to consideration of disparate treatment claims brought under Title VII, § 1981 and the LEDL.[7]  To establish a prima facie case of race discrimination, the plaintiff must demonstrate that she is:  (1) a member of a protected class;[8] (2) qualified for the position; (3) subject to an adverse employment action; and (4) after the adverse employment action her position was filled by someone from outside the protected class or that other similarly situated persons outside the protected class were treated more favorably.  *Grimes v. Texas Dept. of Mental Health*, 102 F.3d 137, 140 (Cir. 1996); *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507,

---

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

[7] Defendant stated that the plaintiff alleged a claim for breach of implied contract in Count XV.  However, a review of this count shows that the claim is alleged under 42 U.S.C. § 1981. Section 1981 is limited to claims of race discrimination.  *See*, *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 2594 (1976); *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 296, 96 S.Ct. 2574, 2586 (1976).  The analysis of a claim for employment discrimination under Title VII and § 1981 is identical.  *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).
Louisiana courts look to federal employment discrimination law when interpreting Louisiana employment laws.  *Baker v. FedEx Ground Package System, Inc.*, 278 Fed.Appx. 322 (5th Cir. 2008).

[8] Plaintiff alleged discrimination based on her "race/color (Caucasian/white)."  Record document number 36, Third Amended Complaint, ¶ 24.

512–13 (5th Cir. 2001).  The elements of a plaintiff's prima facie case necessarily vary depending on the particular facts of each case, and the nature of the claim.  *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 3 (5th Cir. 1996); *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

A plaintiff's prima facie case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason.  The burden is one of production, not persuasion, and "can involve no credibility assessment."  *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106, *citing*, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748 (1993); *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000).

Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of it, the inference created by the prima facie case drops out of the picture.  *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222  (5th Cir. 2000).  The *McDonnell Douglas* framework with its presumptions and burdens disappears, and the only remaining issue is whether or not there was unlawful discrimination.  The fact finder must decide the ultimate question of whether the plaintiff has proven intentional discrimination.  *Id.; Reeves*, *supra*.

A plaintiff may attempt to establish that she was the victim

6

of intentional discrimination by offering evidence that the employer's legitimate nondiscriminatory reason is unworthy of belief. The trier of fact may also consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn from it, on the issue of whether the defendant's explanation is pretextual. *Reeves*, *supra*; *Russell*, 235 F.3d at 222-23. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves*, 120 S.Ct. at 2108-09; *Russell*, 235 F.3d at 223.

Whether summary judgment is appropriate in any particular case will depend on a number of factors including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence relevant to the employer's motive. *Reeves*, 120 S.Ct. at 2109; *Crawford*, 234 F.3d at 902. The ultimate determination in every case is whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable fact finder could infer discrimination. *Crawford*, *supra*.

As a result of the Supreme Court's decision in *Desert Palace v. Costa*, 539 U.S. 90, 123 S.Ct. 2148 (2003), the Fifth Circuit has developed a modified *McDonnell Douglas* approach under which a plaintiff relying on circumstantial evidence in support of her

claim is not limited to demonstrating that the defendant's reason is pretextual, and may alternatively establish that discriminatory animus was a motivating factor in an adverse employment decision. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351-352 (5th Cir. 2005), *citing*, *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004).

The parties' burdens under the modified *McDonnell Douglas* approach are as follows:

> [Plaintiff] must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative).

*Machinchick*, 398 F.3d at 352; *Keelan*, 407 F.3d at 341.

Therefore, in order to withstand summary judgment, using direct or circumstantial evidence, the plaintiff is required to present sufficient evidence for a reasonable jury to conclude that race was a motivating factor for the defendant's employment action. *Roberson v. Alltel*, 373 F.3d at 652.

Plaintiff may also establish a violation of Title VII, § 1981 and the LEDL by proving that the workplace is permeated with discriminatory intimidation, ridicule and insult that is so severe

8

or pervasive that it alters the conditions of employment and creates a hostile or abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370 (1993); *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298-99 (5th Cir. 2001). In order to establish a claim that race or sex discrimination has created an abusive or hostile working environment, a plaintiff must prove the following four elements in cases where it is asserted that a supervisor with immediate or successively higher authority perpetrated the harassment: (1) that she belongs to a protected class; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on race or gender, and (4) that the harassment affected a term, condition, or privilege of employment. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999);[9] *Woods*, *supra*, n. 2. If the alleged harassment is committed by a co-worker rather than a supervisor, the plaintiff must also prove a fifth element: (5) that her employer knew or should have known of the harassment and failed to take prompt remedial action. *Watts*, *supra*, n. 3; *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).[10]

For harassment to affect a term, condition or privilege of employment it must be both objectively and subjectively severe or

---

[9] *Citing*, *Burlington*, *supra*; *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998).

[10] *Citing*, *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 952 (1987).

pervasive, that is, the work environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Lauderdale v. Texas Dept. of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007). Whether a working environment is objectively hostile or abusive is determined by considering the totality of the circumstances. Courts look to: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the conduct undermines the plaintiff's workplace competence. *Hockman*, 407 F.3d at 325-26; *Harris*, 510 U.S. at 23, 114 S.Ct. at 371.

Not all harassment will affect the terms, conditions, or privileges of employment. The mere utterance of an offensive comment or remark which hurts an employee's feelings is not sufficient to affect the conditions of employment. Simple teasing, offhand comments, and isolated incidents, unless they are extremely serious, are not sufficient to affect the terms, conditions or privileges of employment. *Lauderdale*, *supra*; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986).

## Analysis

Defendant argued that it is doubtful the plaintiff can establish a prima facie case of race discrimination, but assumed

for purposes of this motion that the plaintiff could do so.[11] Therefore, defendant relied on evidence of its legitimate, nondiscriminatory reasons for its employment decision, and the plaintiff's lack of evidence to support her claim of race discrimination.

In opposition, the plaintiff made the following arguments: (1) Natasha Carter, a black female co-worker, treated the plaintiff in a negative manner but never treated other black employees in a negative manner; (2) Carter got her white friend and co-worker, Anita Rolens, to harass the plaintiff; (3) the defendant did nothing about Carter's or Rolens' harassment of the plaintiff despite knowing that Carter had previously harassed another employee of Asian descent; (4) another employee who is also Asian was treated more favorably than the plaintiff because, unlike the plaintiff, the Asian employee was given a different job assignment when she had trouble working with another employee. Review of the record establishes that none of the plaintiff's arguments are supported by the evidence.

---

[11] Defendant noted that the plaintiff has no evidence that she was replaced by someone outside her protected group. Defendant also argued that the plaintiff cannot establish an adverse employment action because she resigned to avoid her termination. Plaintiff argued that she was constructively discharged. It is unnecessary for the court to resolve this issue because, for purposes of the motion, the defendant does not contest that the plaintiff suffered an adverse employment action and presented a legitimate, nondiscriminatory reason for the decision to terminate the plaintiff's employment.

Plaintiff relied on allegations regarding a co-employee who is Indian.[12]  Even if these allegations were competent summary judgment evidence, the allegations show that this individual was not similarly situated to the plaintiff.  Plaintiff also relied on evidence that Carter had a misunderstanding with an Asian co-worker[13] to show that the defendant knew of this prior incident, yet failed to do anything to stop Carter's harassment of the plaintiff.  However, the defendant submitted uncontested evidence that the events involving Carter and Cheng occurred more than a year after the plaintiff's employment ended.[14]

A substantial portion of the plaintiff's allegations focused on Carter and Rolens.  A careful examination of the summary judgment evidence does not support any reasonable inference of race discrimination in the events related to either Carter or Rolens.

Defendant submitted uncontradicted evidence which showed that after the plaintiff complained about being unable to communicate with Carter, at the plaintiff's request Kathy Blankenship directed another employee, Richard Clousing, to provide training to the plaintiff.  Blankenship also conducted a meeting with the plaintiff

---

[12] Plaintiff only identified this employee as "Sharada, a co-employee, who is of India" descent.  Third Amended Complaint, ¶ 13.  Plaintiff's allegations indicate that this employee worked in another department with different managers than the plaintiff had.

[13] This individual is identified as Yuyi Cheng.  Plaintiff Exhibit 29, Pate deposition, p. 10.

[14] Record document number 56-3, Pate affidavit.

and her co-workers to discuss their difficulties in getting along with one another.[15]  Likewise, Jenifer Williams, who supervised both Carter and the plaintiff, convened a meeting for the two to discuss the problems in their work relationship.  Williams testified that at the end of the meeting the plaintiff and Carter were both in agreement that everything was alright.[16]  Plaintiff also testified that after she complained about Carter's attitude, her supervisors honored her request not to have to interact with Carter in performing her job duties.[17]

Plaintiff has no evidence to support her personal belief that Carter incited Rolens to harass the plaintiff.  Finally, even accepting as true the plaintiff's testimony that Carter treated her badly as compared to her black co-workers, there is no evidence that Carter's attitudes or actions influenced the decisions of Blankenship or Sharon Perez,[18] the supervisors who made the decision

---

[15] Record document number 54-7, Blankenship affidavit.

[16] Jenifer Williams was the immediate supervisor of the plaintiff and Carter.  Plaintiff Exhibit 32, Williams deposition, p. 6, 8-13.

[17] Record document number 54-4, Plaintiff deposition, pp. 109, 156.

[18] During the plaintiff's employment Perez was the undersecretary of the department, and Blankenship was the Accountant Administrator over the Office of Management and Finance where the plaintiff worked.  These individuals are the same race as the plaintiff.  Blankenship stated in her affidavit that she is a white female and that she recommended to Perez, also a white female, that the plaintiff be terminated.  Record document number

(continued...)

to terminate the plaintiff's employment.

Defendant's summary judgment evidence establishes its legitimate, nondiscriminatory reason for making the decision to terminate the plaintiff's employment – deficient work performance and difficulty maintaining appropriate working relationships with her co-workers.  These reasons are set forth in the affidavits of Blankenship, Perez and Pate.[19]  Plaintiff did not offer any evidence to dispute the statements from these individuals that her work performance was deficient.  Nor did the plaintiff present any facts to dispute their statements that the plaintiff had difficulty interacting and maintaining appropriate relationships with her fellow employees.

In summary, there is no evidence to dispute the defendant's reasons for the plaintiff's termination.  Nor is there any other evidence to support a reasonable inference that the defendant's conduct toward the plaintiff was motivated by her race.  Therefore, summary judgment is granted in favor of the defendant on the plaintiff's claim that she was terminated because of her race.

---

[18](...continued)
54-6, Perez affidavit; Record document number 54-7, Blankenship affidavit.  Perez, who make the final decision to terminate the plaintiff, was also the person who had authorized her hiring. Perez affidavit, ¶ 5.

[19] Pate is the director of Human Resources for the Department of Economic Development.  Pate notified the plaintiff that she was being terminated.  Record document number 54-8, Pate affidavit; Plaintiff Exhibit 29, Pate deposition, p.8.

Plaintiff also alleged claims of a hostile work environment because of her race and gender. Again, these allegations focused on the alleged conduct of Carter and Rolens. With regard to the sex-based claim, the plaintiff believed that Rolens was a homosexual, and that Rolens' friendship with Carter appeared to be a homosexual relationship. According to the plaintiff, this caused Rolens to harass the plaintiff by criticizing her work, throwing papers on her desk, approaching her desk in an abrupt manner and instigating arguments.

Plaintiff's allegation of sexual harassment based on the conduct of Rolens falls in the category of same-sex sexual harassment. In such cases a plaintiff can establish the essential element that the harassment was based on sex by showing: (1) the alleged harasser made explicit or implicit proposals of sexual activity, and providing credible evidence that the harasser was homosexual; (2) the harasser was motivated by general hostility to the presence of members of the same sex in the workplace; or (3) direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002).[20]

---

[20] In cases involving allegations of same-sex harassment, the court must first look at whether the alleged harassing conduct constitutes discrimination because of the individual's sex. *La Day*, *supra*; *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 1002 (1998). This is the third essential element of a sexual harassment-hostile environment claim. *Mota v.* (continued...)

The only competent summary judgment evidence relevant to this issue is the plaintiff's own deposition testimony.  This testimony shows that the plaintiff has no evidence to satisfy any of the *La Day* standards for establishing that the alleged discrimination or harassment was because of her sex.  In her testimony the plaintiff stated that the only evidence to support her claim of sex discrimination were the actions of Rolens.  Plaintiff testified that she believed Rolens was homosexual based on her voice and appearance.[21]  Plaintiff also testified that Rolens never said anything sexual to her.[22]

Viewing this evidence in the light most favorable to the plaintiff, a rational trier of fact could not reasonably conclude that any alleged actions by Rolens which the plaintiff complained about constituted harassment because of sex.  Therefore, the defendant is entitled to summary judgment as to the plaintiff's sexual harassment-hostile environment claim under Title VII and the LEDL.

Similarly, the defendant is entitled to summary judgment as to the plaintiff's racial harassment-hostile environment claim. Defendant argued that the evidence the plaintiff offered to support

---

[20](...continued)
*The University of Texas Houston Health Services Center*, 261 F.3d 512, 523 (5th Cir. 2001).

[21] Plaintiff deposition, pp. 158-62.

[22] *Id.* p. 164.

this claim - the alleged harassment by Carter - is insufficient to support a reasonable inference that the harassment was severe or pervasive, or that it was motivated by the plaintiff's race.  A review of the plaintiff's deposition testimony supports the defendant's argument.

Plaintiff essentially testified that Carter is black and that Carter never treated any African-Americans in the same negative manner she treated the plaintiff.[23]   However, this vague and conclusory testimony is insufficient to support a reasonable inference of race discrimination.  Plaintiff also argued that Carter's harassment of Cheng and the defendant's prior knowledge of this harassment shows that Carter's treatment of the plaintiff was racially motivated.

A reasonable jury could not infer race discrimination from this evidence because the affidavit and testimony of Pate establishes that the incident was a simple misunderstanding between the two employees, and the evidence does not indicate there was any harassing conduct by Carter.[24]  And again, the undisputed evidence also shows that this incident occurred long after the plaintiff's employment ended.

The nature and/or frequency of Carter's allegedly improper

---

[23] *Id.*, pp. 154, 158, 159.

[24] Pate deposition, p. 10; Record document number 56-3, Pate affidavit.

conduct is also not factually sufficient to support a reasonable inference that the alleged harassment was severe or pervasive. Other than the incident where Carter supposedly tried to grab some papers out of the plaintiff's hand and asked if she made the plaintiff nervous, the other alleged instances about which the plaintiff testified involved looks, an intimidating tone of voice or whispering with other employees.[25]  Moreover, the plaintiff acknowledged that after the meeting with Williams she did not have to interact with Carter at work.[26]

Therefore, the defendant is entitled to summary judgment as to the plaintiff's federal and state law racial and sexual harassment-hostile environment discrimination claims.

### The ADA and the LEDL: Disability Discrimination

#### Applicable Law

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474 (5th Cir. 2006), *quoting*, 42 U.S.C. §

---

[25] Plaintiff deposition, pp. 155, 156, 160, 166, 167.

[26] *Id.*, pp. 109, 156.

18

12112(a).

The term "individual with a disability"  means an individual who: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108, 111 (5th Cir. 2005); *Deas v. River West, L.P.*, 152 F.3d 471, 475 n.6 (5th Cir. 1998), *cert.denied*, 527 U.S. 1035, 119 S.Ct. 2392 (1999).  Thus, a plaintiff must first satisfy the threshold requirement that she has a disability under at least one of these statutory theories. *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996); *Bridges v. City of Bossier*, 92 F.3d 329, 331 (5th Cir. 1996), *cert. denied*, 519 U.S. 1093, 117 S.Ct. 770 (1997).  An impairment, standing alone, is not necessarily a disability.[27]  To be disabled, one must have a condition that "substantially limits" a "major life activity."  Major life activities refer to those activities that are of central importance to most people's everyday lives. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).  The term "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing,

---

[27] The disability determination is not necessarily based on the name or diagnosis of the impairment, but rather on the effect of that impairment on the life of the individual. *Deas*, 152 F.3d at 478.

hearing, speaking, breathing, learning, and working." *Watson v. Texas Youth Com'n*, 269 Fed.Appx. 498, 500 (5th Cir. 2008). While not specifically listed in the EEOC regulations, major life activities can include lifting, reaching, sitting and standing. *Jenkins*, *supra,* citing, *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725, n. 7 (5th Cir. 1995).

The term "substantially limits" means either (a) an inability "to perform a major life activity that the average person in the general population can perform" or (b) a significant restriction "as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Watson*, *supra*. Factors to be considered in determining whether an impairment is substantially limiting are: (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its actual or expected permanent or long-term impact. *Gonzales v. City of New Braunfels, Tex.*, 176 F.3d 834, 836 (5th Cir 1999).[28]

---

[28] In 2008 Congress enacted the ADA Amendments Act of 2008 (ADAAA). The effective date of the new law is January 1, 2009. Any change in the law would not affect the plaintiff's claim in this case which arose before the ADAAA was enacted. *See*, *Schmitz v. Louisiana,* 2009 WL 210497 (M.D.La. Jan. 27, 2009), *citing*, *Rudolph v. U.S. Enrichment Corp., Inc.*, 2009 WL 111737 (W.D. Ky., Jan. 15, 2009); *E.E.O.C. v. Agro Distribution LLC*, 555 F.3d 462, n.8 (5th Cir. 2009); *Cooper v. United Parcel Service, Inc.*, 2010 WL
(continued...)

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

It is well-established that this Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). The scope of Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or arm of the state. *Id.* The Eleventh Amendment also bars state law claims in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21, 104 S.Ct. 900 (1984). The Supreme Court held in *Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356, 360, 121 S.Ct. 955, 960 (2001), that the Eleventh Amendment bars private money damages actions against the state for violations of Title I of the ADA, which prohibits employment discrimination against individuals with disabilities.

### Analysis

Defendant argued that the plaintiff's employment

---

[28](...continued)
610047, n.5 (5th Cir. Feb. 22, 2010). Therefore, the law cited in this section is the version of the ADA and jurisprudence that was controlling before the effective date of the ADAAA. This legal framework also governs the plaintiff's disability discrimination claim under the LEDL. *Mincey v. Dow Chemical Co.*, 217 F.Supp.2d 737, 742 (M.D.La. 2002).

discrimination claims based on an alleged disability are precluded by the Eleventh Amendment and the Supreme Court's holding in *Garrett*. Defendant argued that even if the plaintiff's claim was not barred by the Eleventh Amendment, there is no evidence to support the threshold requirement of a disability discrimination claim - that the plaintiff has a disability as it is defined under the statute.

Plaintiff is claiming money damages from her employer, the State, because she alleges that she was discriminated/retaliated against and denied accommodations on the basis of a disability, i.e., a diagnosed nervous condition. This claim falls under *Garrett's* holding and is barred by the Eleventh Amendment. The Eleventh Amendment is also a bar to the plaintiff's state law disability discrimination claim.

Even without *Garrett* the defendant would still be entitled to summary judgment. Assuming that the plaintiff had a diagnosed nervous/mental impairment or that the defendant was aware that she had such an impairment, there is no evidence that this impairment, actually or as perceived by the defendant, substantially limited the plaintiff in a major life activity. Based on both the Eleventh Amendment and the summary judgment record, the defendant is entitled to summary judgment as to the plaintiff's claims for disability discrimination and retaliation under the ADA and the LEDL.

## Title VII, § 1981 and the LEDL: Retaliation Claim

### Applicable Law

Under Title VII, § 1981 and the LEDL an individual is protected from retaliation for opposing unlawful discrimination in the workplace.

A plaintiff establishes a prima facie case for unlawful retaliation under 42 U.S.C. § 2000e-3(a) and § 1981[29] by proving: (1) that she engaged in activity protected by Title VII or § 1981; (2) that an adverse employment action occurred; and (3) that a causal connection exists between the protected activity and the adverse employment action. *Lemaire v. State of Louisiana*, 480 F.3d 383 (5th Cir. 2007); *Foley*, 355 F.3d at 339-340.

An employee has engaged in protected activity if she has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing. *Grimes*, 102 F.3d at 140. The opposition clause requires the employee to show that she had at least a reasonable belief that the practices she opposed were unlawful. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). However, proof of an actual unlawful employment practice is not required to state a claim for

---

[29] Section 1981 protects against retaliation for opposition to race discrimination in the workplace. *Foley v. Univ. of Houston System*, 355 F.3d 333, 339 (5th Cir. 2003); *Swanson v. City of Bruce, Miss.*, 105 Fed.Appx. 540, 543 (5th Cir. 2004).

unlawful retaliation. *Id.*, at 309, n.10, *citing*, *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137-41 (5th Cir. 1981).

The causal link required by the third prong of the prima facie case does not have to meet a "but for" standard. A plaintiff does not have to prove that her protected activity was the sole factor motivating the employer's challenged actions in order to establish the causal link element of a prima facie case. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Close timing between an employee's protected activity and an adverse action against the employee may provide the causal connection needed to make out a prima facie case of retaliation. *McCoy v. City of Shreveport*, 492 F.3d 551, 562, n. 28 (5th Cir. 2007); *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

If the plaintiff establishes a prima facie case of retaliation, the defendant must come forward with a legitimate, nondiscriminatory reason for its adverse employment action. After the defendant advances its reason, the focus then becomes whether the employer retaliated against the employee for engaging in protected activity - which is the ultimate issue in a retaliation case.[30] Unlike establishing the causal link required by the third

---

[30] Once the employer offers a legitimate, nonretaliatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive. *McCoy*, *supra*.

prong of the prima facie case, the plaintiff is required to prove that the adverse employment action would not have occurred "but for" the protected activity. *Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir. 2000); *Septimus* v. *University of Houston*, 399 F.3d 601, 608-09 (5th Cir. 2005). "Whether or not there were other reasons for the employer's actions, the employee will prevail only by proving that "but for" the protected activity she would not have been subjected to the action of which she claims." *Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir. 1984); *Strong v. University Health Care System, L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007). Although not in itself conclusive, the timing of an employer's actions can be a significant factor in the court's analysis of a retaliation claim. *Gee*, 289 F.3d at n.3, *citing*, *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992).

## Analysis

Defendant essentially argued that the plaintiff's retaliation claim fails because there is no evidence that the plaintiff engaged in any protected activity. This is so, defendant argued, because during her employment the plaintiff never filed a grievance or complaint of discrimination. Plaintiff asserted that she did file a written complaint/grievance with Pate, but Pate would not read it, and the plaintiff asserted that she made oral complaints to her supervisors who never informed Pate of her complaints.

25

Assuming the plaintiff is contending that the verbal complaints she made to her supervisors about Carter were protected activity, the evidence related to these events does not support a reasonable inference that the plaintiff engaged in protected conduct.   The evidence concerning the meetings the plaintiff had with her supervisors about her difficulties working with Carter, did not indicate that the plaintiff complained about being discriminated against because of her race or sex.  Plaintiff submitted a grievance form and a written complaint[31] which she stated she presented to Pate, who then informed her she was being fired.  However, these documents and the plaintiff's statements in her memorandum are not competent summary judgment evidence.   Even if they could be considered they would not establish the plaintiff's prima facie case.  The uncontested evidence offered by the defendant shows that the decision to terminate the plaintiff had already been made by the time the plaintiff submitted her grievance/complaint.   Thus, there is no evidence of a causal connection between the alleged protected activity and the adverse employment action.

Finally, even if the plaintiff could establish a prima facie case of retaliation, she has no evidence to dispute the defendant's legitimate, nonretaliatory reasons for her termination.   Thus, there is no evidence from which a rational jury could find that the

---

[31] Plaintiff Exhibits 11 and 26.

26

plaintiff's termination would not have occurred but for the plaintiff engaging in conduct protected under federal or state employment discrimination laws.

## U.S. Constitution: Equal Protection & Fourteenth Amendment

In Counts XI and XVI the plaintiff alleged that the defendant's actions violated the Equal Protection Clause and Fourteenth Amendment of the United States Constitution. Although unclear, a liberal interpretation of the plaintiff's allegations and arguments indicates that the plaintiff's basis for these claims is that she did not receive the same rights as permanent state Civil Service employees, that she was deprived of her job because of her race, white, and in the process a black co-worker received more favorable treatment.

### Applicable Law

It is well-settled that these claims cannot be asserted directly under the Constitution, and that 42 U.S.C. § 1983 is the proper procedural vehicle for asserting violations of rights under the U.S. Constitution. *Hearth, Inc. v. Dept. of Public Welfare*, 617 F.2d 381, 382-83 (5th Cir. 1980); *Mitchell v. City of Houston, Tex.*, 57 Fed.Appx. 211 (5th Cir. 2003); *Champluvier v. Couch*, 557 F.Supp.2d 748, 750 (N.D. Miss. 2008). Under *Will v. Michigan*, 491 U.S. 58, 63-71, 109 S.Ct. 2304 (1989), a state and its agencies are not persons who can be sued under § 1983.

27

**Analysis**

A review of the plaintiff's Third Amended Complaint does not indicate that the plaintiff alleged a claim under § 1983. Even if plaintiff had asserted one, it is apparent that the plaintiff has only sued her employer, the State of Louisiana.[32] Therefore, as a matter of law, the plaintiff's claims against the defendant under the Equal Protection Clause and Fourteenth Amendment of the U.S. Constitution cannot go forward and must be dismissed.

## Louisiana Constitution: Rights to Individual Dignity and Privacy

### Applicable Law

The plaintiff's claimed Right to Individual Dignity is derived from La. Const. Art. 1, § 3, which provides as follows:

> No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

Her claimed Right to Privacy is derived from La. Const. Art. 1, § 5, which provides, in part, as follows:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.

---

[32] Plaintiff alleged that the "[d]efendant is a state agency employer for the State of Louisiana." Third Amended Complaint, ¶ 2.

## Analysis

The basis for the plaintiff's Right to Privacy claim is not clear.  The allegations of the plaintiff's complaint mentioned the plaintiff telling Carter and her supervisors that Carter made her nervous, and Blankenship denied the plaintiff's request for Carter to continue to do the payroll.[33]  Plaintiff stated in her memorandum that her right to privacy was violated by the hostile treatment she received from Rolens.   Plaintiff has failed to provide any competent summary judgment evidence to support this claim on either basis.

In her memorandum the plaintiff merely relied on the allegations in her complaint.  Plaintiff cannot rely on unsworn allegations to defeat a properly supported motion for summary judgment.  To the extent the plaintiff contended that her privacy was violated because the defendant forced her to divulge a medical condition, the plaintiff's deposition testimony does not support this claim.  Plaintiff testified that she never told anyone at work that she had a medical condition, but she did tell Carter and her supervisors that Carter made her nervous.[34]  No reasonable jury could conclude from this evidence that the defendant forced the plaintiff to disclose a medical condition or otherwise violated the

---

[33] Record document number 36, Third Amended Complaint, Count XII, ¶ 63.

[34] Plaintiff deposition, pp. 178-80.

29

plaintiff's privacy.

The basis for the plaintiff's alleged violation of her Right to Individual Dignity under the Louisiana Constitution appears to be an assertion that the state's employment laws and the actions of the defendant discriminate on the basis of race.  Plaintiff cited no support for her argument that the state's employment laws "have a discriminatory effect on White groups."[35]  To the extent the plaintiff contends that the defendant denied her equal protection of the laws during her employment by discriminating against her and in favor of Carter, the foregoing analysis on the plaintiff's race discrimination claim under federal and state law applies.  There is no evidence to dispute the defendant's legitimate reasons for the plaintiff's termination, nor is there any other evidence to support a reasonable inference that the defendant's conduct toward the plaintiff was motivated by her race.

## Article 2315: Intentional Infliction of Emotional Distress

### Applicable Law

Plaintiff also asserted a claim for intentional infliction of emotional distress under Louisiana Civil Code Article 2315.  In order to recover for intentional infliction of emotional distress, a plaintiff has the burden of proving: (1) that the conduct of the defendants was extreme and outrageous; (2) that the emotional

---

[35] Record document number 55, p. 22.

distress suffered by her was severe; and (3) that the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991); *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 514 (5th Cir. 1994). The conduct complained of must be so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as utterly intolerable in a civilized community. *Id.* Liability arises only where the mental suffering or anguish is extreme, and the distress suffered must be such that no reasonable person could be expected to endure it. *White*, 585 So.2d at 1210.

## Analysis

Defendant argued that the plaintiff's own deposition testimony demonstrates that the plaintiff has no evidence to support the elements of this state law claim. According to the defendant, this testimony shows that the plaintiff has no evidence to connect any of the incidents she claims caused her severe emotional distress to persons in the state agency where she was employed.

A review of the evidence relied on by the defendant supports the defendant's argument.[36] Plaintiff's testimony shows that the

---

[36] Record document number 54-4, plaintiff depo., pp. 77, 126, 127, 131-32, 173, 174 and 181. Plaintiff testified that she had no facts but believed that her supervisors and co-workers were somehow involved in poisoning her, following her and tapping her phone, and
(continued...)

plaintiff has only her personal belief that the alleged harassing incidents were instigated or caused by her co-workers, supervisors or others associated with the state agency where she worked. Plaintiff has no facts to support this claim.

Plaintiff's remaining deposition testimony regarding the actions of Rolens, Carter and Blankenship are also insufficient to support a claim for intentional infliction of emotional distress. Plaintiff essentially related incidents of rude comments, looks, stares, whispering and these individuals talking together and looking at her.  No reasonable trier of fact could find that their conduct was extreme and outrageous.[37]

Plaintiff also relied on all the allegations in her Third Amended Complaint and offered exhibits to show that she received medical treatment because of the actions of the defendant.  Neither the plaintiff's allegations or the exhibits are competent summary judgment evidence because the plaintiff's allegations are not sworn and the medical records are not authenticated by an affidavit or

---

[36](...continued)
in incidents involving inmates at the state capitol obstructing her path, a man in a car near the state capitol yelling at his passenger, and a man demanding that the plaintiff let him into the building.

[37] Under Louisiana law the threshold is high for establishing intentional infliction of emotional distress in a workplace environment.  Liability is usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time, and the resulting mental anguish or suffering must be extreme or unendurable.  *See*, *Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002), *citing*, *White,* 585 So.2d at 1209.

other means.  Even if they could be considered they are insufficient to create a genuine dispute for trial on her claim for intentional infliction of emotional distress.  Plaintiff's allegations are similar to her deposition testimony – vague, conclusory allegations unsupported by any facts.  The medical records show that the plaintiff complained of job-related depression, anxiety and nervousness, but the records do not indicate the severity or cause of these symptoms.[38]

Summary judgment is granted as to the plaintiff's state law claim for intentional infliction of emotional distress.

## FMLA and Louisiana Worker's Compensation Claims

In Counts VII and VIII of her Third Amendment Complaint the plaintiff alleged that the defendant's conduct violated the FMLA and state Worker's Compensation Laws.  In response to the defendant's motion the plaintiff did not offer any evidentiary support for these claims and specifically stated that she "wishes to dismiss" the claims.  Therefore, defendant's Motion for Summary Judgment as to the plaintiff's FMLA and Worker's Compensation claim is granted.

## Conclusion

Defendant's motion established that it is entitled to summary

---

[38] *Id.*

judgment in its favor dismissing all federal claims alleged by the plaintiff under the United States Constitution, Title VII, the Americans with Disabilities Act, the Family and Medical Leave Act and 42 U.S.C. § 1981(a).  Defendant's motion further established that it is entitled to summary judgment in its favor dismissing the state law claims asserted by the plaintiff under the Louisiana Constitution, the Louisiana Employment Discrimination Law, Louisiana Civil Code Article 2315 and the Louisiana Worker's Compensation Law.

Accordingly, the Motion for Summary Judgment filed by defendant the State of Louisiana, Department of Economic Development is granted and the Motion for Summary Judgment filed by plaintiff Darlene Alleman is denied.

Baton Rouge, Louisiana, March 17, 2010.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE